# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| TERRI A. JAMISON, | : | Case No. 3:15-cv-327 |
| | : | |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Chief Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    Introduction

Plaintiff Terri A. Jamison applied for a period of disability and Disability

Insurance Benefits on April 1, 2013.  She asserted that after working for approximately

thirty-seven years, she could no longer work a substantial paid job as of March 15, 2011

due to diabetes mellitus with diabetic neuropathy, plantar fasciitis, depressive disorder,

anxiety disorder, lumbar spondylosis, left knee arthritis, bilateral carpal tunnel syndrome,

and obesity.  Her application, medical records, and other evidence proceeded to a hearing

before Administrative Law Judge (ALJ) Theodore W. Grippo who later issued a written

decision.  The result of his decision was the denial of Plaintiff's application based on his

central conclusion that Plaintiff was not under a "disability" as defined in the Social

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Security Act.  Plaintiff brings the present case challenging ALJ Grippo's non-disability decision.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record (Doc. #7), and the record as a whole.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings.  The Commissioner asks the Court to affirm ALJ Grippo's non-disability decision.

## II.     Background

Plaintiff asserts that she has been under a "disability" since March 15, 2011.  She protectively filed her application for benefits on April 1, 2013.  She was fifty-seven years old at the time and was therefore considered a person of "advanced age" under Social Security Regulations.  She has a high school education.

### A.     Plaintiff's Testimony

Plaintiff testified at the hearing before the ALJ that she was last employed as an assembly-production worker in March 2011.  (Doc. #7, *PageID* #80).  She worked there for two years and was fired for being absent.  *Id.* at 80-81.  From 2000 to 2008, she worked as a production worker.  *Id.* at 95.  From 1974 to 2000, she worked for Franciscan Medical Center in Dayton.  *Id.* at 96.  She started in the kitchen, moved to housekeeping, and later became an EMG technician.  *Id.*

Plaintiff has a history of carpal tunnel syndrome in both of her hands/wrists.  *Id.* at 81.  After having surgery on her right hand, she developed trigger thumb, and "pulling,

2

tugging… agitates it." *Id.* at 82.  Her right wrist aches every day, and the pain is severe

on some days. *Id.* at 83.  The pain increases with use. *Id.*  She wears a brace every day.

*Id.*  She does not have any symptoms in her left wrist. *Id.* at 82-83.  Plaintiff also has

pain in her left shoulder three to four times per week. *Id.* at 87.  Housework that involves

lifting her arms above her head increases her shoulder pain. *Id.*  She has not had any

treatment for her shoulder. *Id.* at 88.  When she walks a lot or sits on something that is

not comfortable, she experiences lower back pain. *Id.*  She explained that the pain is

caused by "two disks that were out of place." *Id.*  Additionally, she has problems with

her right knee. *Id.* at 89.  If she bends down, then she cannot use her right knee to pull

herself up. *Id.*

Plaintiff was diagnosed with diabetes, and she is currently on medication to

control the symptoms. *Id.* at 84.  She checks her blood sugar once per week, and it is "in

check." *Id.*  She has diabetic nerve pain and neuropathy in both feet, and it is severe in

her right foot. *Id.* at 85.  She has pain in her right leg every evening, and she has pain in

both legs approximately twice per week. *Id.*  The pain "burns in my leg and feet….

Sometimes I can't even get up right away because they're hurting so bad." *Id.*  Her pain

increases with activity. *Id.* at 86.  She can walk for approximately thirty minutes before

the pain starts increasing. *Id.* at 85.  She takes medicine to help with the pain in her legs.

*Id.* at 86.  She also has been using a cane since she fell in the shower in November 2013.

*Id.* at 86-87.

Plaintiff was diagnosed with depression. *Id.* at 89.  She does not have energy to

"do too much or get up." *Id.* at 90.  She also has difficulty focusing on things and

concentrating.  *Id.*  She quit driving because she started noticing that she would drive somewhere and not know how she got there.  *Id.*  She is not currently on any medication for depression.  *Id.*

Plaintiff testified that she could lift and carry fifteen pounds comfortably.  *Id.* at 83.  She can be on her computer for fifteen minutes before experiencing symptoms in her right wrist and hand.  *Id.* at 82.  She explained that if she attempts to lift more than fifteen pounds without bracing herself and is not paying close attention, she drops things without recognizing that it is out of her hands.  *Id.* at 84.  She estimated that she could sit for one hour and stand for one hour.  *Id.* at 98.

Plaintiff cooks meals approximately once per week, washes dishes three times per week, dusts "sometimes," and vacuums once per week.  *Id.* at 90-91.  She usually only washes dishes for five minutes at one time.  *Id.* at 84.  She also does laundry with the assistance of her husband.  *Id.* at 91.  She does not have any hobbies.  *Id.*  Her sister comes to visit her, and she visits her other sister approximately once per month.  *Id.* at 92.  She used to attend church regularly, but in the past six months, she has only gone three times.  *Id.*

### B.    Vocational Expert's Testimony

The ALJ asked vocational expert (VE), Susan Entenberg, the following hypothetical:

> Please assume a hypothetical individual with the same age, education and vocational background as those of the claimant.  And assume that such individual can lift and carry a maximum of 15 pounds.  Assume that she would need a sit-stand option with the ability to alternate once an hour, and assume further that she cannot engage in fine, excuse me, in repetitive fine

4

or gross motor activity with either hand. Would such an individual be able
to do any of the past work of the claimant?

*Id.* at 100. The VE responded that the claimant would not be able to do past work. *Id.*
The ALJ asked if there was any work that the claimant could perform, and the VE
responded that there was not. *Id.*

### C. Medical Opinions

#### i. Damian M. Danopulos, M.D.

Dr. Damian Danopulos examined Plaintiff on August 30, 2013. *Id.* at 328. Dr.
Danopulos noted Plaintiff had bilateral carpal tunnel release surgery in 2007, and one and
one-half years later, she began experiencing burning in her right wrist. *Id.* at 333. He
found that the motion and grip strength in her wrists were normal. *Id.* Dr. Danopulos
also noted she told him that she has a history of right foot and ankle pain and numbness.
*Id.* Upon examination, Dr. Danopulos found that her right foot and ankle were normal
and painless. *Id.* She reported a history of bilateral shoulder pain, and Dr. Danopulos
observed "slightly painful motions" in both shoulders. *Id.* Dr. Danopulos noted that she
has a history of high blood pressure and diabetes, both of which are well-controlled. *Id.*
at 334.

Dr. Danopulos concluded that the "objective findings were 1) right wrist
neuralgias, if any, 2) right foot and ankle arthralgias or neuralgias, if any, 3) bilateral
shoulder arthralgias, 4) well controlled blood pressure, 5) prediabetes being checked and
followed properly and 6) history of mental stress, not being evaluated or treated by any
mental specialist." *Id.* He also opined that her "somatic complaints are mild and not

5

interfering with any work-related activities…, her mental stress, if needed, can be evaluated accordingly." *Id.*

### ii. Jerry E. Flexman, Ph.D.

Dr. Jerry Flexman examined Plaintiff on September 17, 2013. *Id.* at 357. He found that Plaintiff "is able to take care of all activities of daily living on her own." *Id.* at 358. He also noted her eye contact was fair forty percent of the time. *Id.* at 359. Dr. Flexman observed she could follow instructions during the evaluation and her intellectual level of functioning was in the average range. *Id.* at 361. He also noted she was able to "maintain focus and attention throughout the 60 to 90 minute interview and assessment…." *Id.* Dr. Flexman opined Plaintiff "may not have problems in relation to others in the workplace," and "[p]ast mental health history would not indicate problems with work pressure." *Id.* Dr. Flexman diagnosed her with Somatic Symptom Disorder and Unspecified Depressive Disorder. *Id.*

### iii. Janet Souder, Psy.D.

Dr. Janet Souder reviewed Plaintiff's medical records on September 27, 2013. *Id.* at 108. Dr. Souder found four impairments: osteoarthrosis and allied disorders, carpal tunnel syndrome, essential hypertension, and affective disorders. *Id.* at 118. She found that all the impairments were non-severe. *Id.* She determined that Plaintiff has no restrictions of activities of daily living and no repeated episodes of decompensation. *Id.* Dr. Souder opined Plaintiff had mild restrictions in maintaining social functioning and maintaining concentration, persistence, or pace. *Id.*

6

### iv.      Stephen W. Halmi, Psy.D.

Dr. Stephen Halmi examined Plaintiff on December 23, 2013.  He observed that

Plaintiff diverted eye contact, sat with a tense posture, and was lethargic.  *Id.* at 395.  He

diagnosed her with Major Depressive Disorder, single episode, moderate and Anxiety

Disorder not otherwise specified.  *Id.* at 397.  Dr. Halmi opined she is capable of

understanding and carrying out simple instructions but would have "difficulty

understanding and carrying out multi-step instructions."  *Id.* at 399.  He also noted that

"her depression would have a significant impact on her ability to complete a simple,

repetitive activity for any extended period of time."  *Id.*  Dr. Halmi opined she might

have intermittent problems interacting with coworkers, supervisors, and the general

public.  *Id.*  He concluded she "does not have the frustration tolerance or patience to

manage difficult people, [and] [s]he would have trouble meeting deadlines."  *Id.*

### v.      Paul Tangeman, Ph.D. and Lynne Torello, M.D.

Dr. Paul Tangeman and Dr. Lynne Torello reviewed Plaintiff's records on January

14, 2014.  *Id.* at 134.  Dr. Tangeman determined Plaintiff has five severe impairments:

Diabetes Mellitus, Dysfunction – Major Joints, Affective Disorders, Anxiety Disorders,

and Somatoform Disorders.  *Id.* at 130.  He opined she had moderate restrictions in

activities of daily living, maintaining social functioning, and maintaining concentration,

persistence, or pace.  *Id.*  Dr. Tangeman found that she would "work best" in a setting

without a fast pace and without frequent changes.  *Id.* at 133-34.  Dr. Torello concluded

Plaintiff was not under a disability.  *Id.* at 136.

### vi.  Stephen Knudson, M.D.

Plaintiff's family-care physician is Dr. Stephen Knudson.  *Id.* at 322.  In July 2013, Dr. Knudson noted that Plaintiff reported pain in her right foot and both legs.  *Id.* He also noted that she had numbness in her extremities, depression, and insomnia.  *Id.* at 323.  He prescribed amitriptyline, Benicar, Klor-Con, naproxen, omeprazole, pravastatin, and tamoxifen.  *Id.* at 326.  In August 2013, Dr. Knudson referred her to a podiatrist for her right-foot pain.  *Id.* at 382.  She reported foot tingling and numbness in September 2013.  *Id.* at 377.  Dr. Knudson prescribed gabapentin.  *Id.* at 380.  Dr. Knudson also noted that she was not taking amitriptyline regularly because it made her drowsy.  *Id.* at 377.  In February 2014, Dr. Knudson noted that she reported pain in her right foot, back, and neck pain.  *Id.* at 505-07.  He prescribed Flexeril.  *Id.* at 508.  In March 2014, she reported pain in her right shoulder, and Dr. Knudson noted that she had a moderately reduced range of motion.  *Id.* at 500-02.

### vii.  Tanisha Richmond, D.P.M.

Dr. Knudson referred Plaintiff to Dr. Tanisha Richmond, a podiatrist.  *Id.* at 512. Plaintiff reported a burning pain in her right-foot-arch area and soreness all through her right ankle when she walks.  *Id.* at 518.  Dr. Richmond noted that she had a neurologic disorder associated with type II diabetes and plantar fasciitis.  *Id.* at 520.  Dr. Richmond advised her to ice her foot and stretch.  *Id.*  Dr. Richmond also discussed heel-spur injections and custom orthotics and dispensed five samples of Biofreeze.  *Id.*

### III.    Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a

scintilla of evidence but less than a preponderance….." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry – reviewing the correctness of the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.    **The ALJ's Decision**

The Social Security Administration employs a five-step sequential evaluation to determine if an applicant is under a benefits-qualifying disability. *See* 20 C.F.R. § 404.1520(a)(4); *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The evaluation asks:

1.    Has the applicant been paid to work recently? If not,

2.    Does the applicant have at least one severe impairment? If so,

3.    Do the applicant's health problems automatically qualify him or her for disability benefits under the Commissioner's Listing of Impairments? If not,

    4.      What is his/her residual functional capacity – *i.e.*, the most the applicant can do on the job despite his/her impairments?  And, given these abilities, can the applicant perform his/her past relevant work? If not,

    5.      Are there a significant number of jobs available that the applicant can do?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Bowen,* 476 U.S. at 470-71; *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374-75 (6th Cir. 2013).  If, at any step during the process, it is determined that the claimant is or is not disabled, the process is terminated. *Despins v. Comm'r of Soc. Sec.,* 257 Fed. Appx. 923, 928-99 (6th Cir. 2007) (citing 20 C.F.R. § 404.1520(a)(4)).

    ALJ Grippo began the sequential evaluation by determining at step one that Plaintiff has not engaged in substantial gainful employment since March 15, 2011.  (Doc. #7, *PageID* #65).  At step two, he found that she does not have a severe impairment or combination of impairments that has "significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months…." *Id*.  Based on that determination, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 70.

**V.**    <u>**Discussion**</u>

    Plaintiff contends that the ALJ erred in finding that she does not have a severe impairment or combination of impairments.  Additionally, Plaintiff asserts that the ALJ erred in failing to consider the third-party statement of Plaintiff's husband.  The Commissioner maintains that the ALJ reasonable concluded that Plaintiff did not have a severe impairment or combination of impairments and that the ALJ properly considered the evidence.

## A.    Step Two

At step two of the five-step sequential evaluation process, the ALJ considers the "medical severity of [the claimant's] impairments."  20 C.F.R. § 404.1520(a)(4).  "An impairment or combination of impairments is not severe if it does not significantly limit [the applicant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).  Basic work activities are defined as "abilities and aptitudes necessary to do most jobs."  *Id.* at § 404.1521(b).

> Examples of these include: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

*Id.*  If the claimant does not have an impairment or combination of impairments that are severe and meet the duration requirement,[2] then the claimant is not disabled.  *Id.*  The Social Security Administration requires the ALJ to consider symptom-related limitations and restrictions:

> If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe.

Soc. Sec. Rul. No. 96-3p, 1996 WL 374181, at *2 (Soc. Sec. Admin. July 2, 1996).

---

[2] "Unless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."  20 C.F.R. § 404.1509.

The Sixth Circuit has construed step two as a "*de minimis* hurdle." *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citation omitted). The Court explained, "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious disability claims without proper vocational analysis." *Id.* (citations omitted). However, "the severity requirement may still be employed as an administrative convenience to screen out claims that are totally groundless solely from a medical standpoint." *Long v. Apfel,* 1 Fed. Appx. 326, 331 (6th Cir. 2001) (internal quotations and citations omitted).

In the present case, ALJ Grippo set forth and applied the correct legal standard at step two. (Doc. #7, *PageID* #s 64-70). Thus, the question for review is whether substantial evidence supports the ALJ's findings. And, "we must defer to an agency's decision even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003) (internal quotations and citations omitted).

### 1. Diabetic Neuropathy, Plantar Fasciitis, and Right Carpal Tunnel Syndrome

Plaintiff asserts that the ALJ erred in finding that Plaintiff's diabetic neuropathy, plantar fasciitis, and right carpal tunnel syndrome were not severe impairments. (Doc.

13

#8, *PageID* #538).  Although Plaintiff is correct that the medical evidence shows that she was diagnosed with those conditions, Plaintiff failed to establish that the conditions were severe.  "The mere diagnosis of [an impairment] … says nothing about the severity of the condition."  *Higgs,* 880 F.2d at 863 (citing *cf. Foster v. Bowen,* 853 F.2d 483, 489 (6th Cir. 1988)).  Plaintiff's treating physicians did not indicate Plaintiff's ability to perform basic work activities was limited by her conditions.

Plaintiff's podiatrist, Dr. Richmond, diagnosed both diabetic neuropathy and plantar fasciitis, but she did not indicate that Plaintiff was limited by either condition. (Doc. #7, *PageID* #520).  Dr. Richmond prescribed medication and recommended icing and stretching exercises.  *Id.* at 513, 520.  Even when Dr. Richmond discussed alternative treatment methods such as heel-spur injections and custom orthotics, she did not advise Plaintiff of any limitations caused by the conditions.  *Id.*  Similarly, Plaintiff's primary-care doctor, Dr. Klug, does not indicate that Plaintiff is limited by her carpal tunnel syndrome.  Further, examining physician Dr. Danopulos opined Plaintiff's "somatic complaints are mild and are not interfering with any work-related activities…."  *Id.* at 334.  The diagnoses of diabetic neuropathy, plantar fasciitis, and carpal tunnel syndrome alone do not establish that the conditions are severe.  Given the lack of medical evidence establishing that Plaintiff was limited by these conditions, it was reasonable for the ALJ to conclude that they were not severe.

### 2. Mental Impairments

Plaintiff asserts that the ALJ erred in finding Plaintiff's mental impairments were not severe.  (Doc. #8, *PageID* #539).  The ALJ provided three reasons for his finding that

14

Plaintiff's mental impairments were not severe: (1) Plaintiff's daily activities showed no greater than mild mental impairment; (2) Dr. Flexman's and Dr. Souder's opinions are entitled to greater weight; and (3) there is no evidence of dedicated mental health treatment. (Doc. #7, *PageID* #69). The record contains a considerable amount of conflicting evidence. Nonetheless, substantial evidence supports both the ALJ's description of Plaintiff's daily activities and the weight he assigned to the medical opinions. However, the ALJ improperly relied on Plaintiff's lack of mental health treatment. Despite this error, and due to the other reasons provided by the ALJ, his finding that Plaintiff's mental impairments were not severe is supported by substantial evidence.

The ALJ first asserted that "claimant's activities of daily living show no greater than mild mental impairment." *Id.* at 68. He elaborated, "Claimant reported the mental ability to manage her personal care, prepare meals, perform housework, shop in stores, use public transportation, manage finances, talk on the telephone, and attend church and bingo." *Id.* at 68 (citing Exhibits 12E, 5F at 3, and 8F at 5). Plaintiff contends that the ALJ's description of her daily activities does not accurately reflect the exhibits the ALJ cited. (Doc. #8, *PageID* #542).

Plaintiff's assertion lacks merit. Although there is conflicting information in the three exhibits, the ALJ's description of Plaintiff's activities is supported by all three exhibits and Plaintiff's own testimony. For example, Dr. Flexman noted that Plaintiff is "able to take care of all activities of daily living on her own." (Doc. #7, *PageID* #358). Dr. Flexman also indicated she prepares food for herself, and Plaintiff testified that she

15

cooks once per week and prepares meals for herself throughout the day. *Id.* at 91, 358.

Turning to household chores, Dr. Flexman noted that she sweeps, cleans, does dishes, and

does the laundry. *Id.* at 358. Plaintiff testified that she does dishes three times per week,

vacuums once per week, does laundry with her husband's assistance, and sometimes

dusts. *Id.* at 91. And, Dr. Halmi indicated Plaintiff does at least a few household chores.

*Id.* at 395.

The ALJ's assertion that Plaintiff shops and uses public transportation is supported

by both Dr. Flexman, who stated Plaintiff goes to the store, and the function report,

which indicates she goes shopping with the assistance of her husband or other family

member. *Id.* at 288, 294, 358. Dr. Flexman's report also indicates she is able to go

places by driving, getting a ride, or riding the bus, and she even used a bus to get to her

appointment with Dr. Flexman. *Id.* at 357-58. Dr. Flexman noted she handles her own

finances, and the function report indicates she can manage money with help/assistance.

*Id.* at 288, 358. Both Dr. Flexman and the function report indicate Plaintiff talks to her

family on the telephone regularly. *Id.* at 294, 358. Finally, the function report indicates

she attends church every Sunday and plays bingo twice per week. *Id.* at 294.

In each of the exhibits, there is also information supporting the opposite

conclusion. However, "[a] reviewing court will affirm the Commissioner's decision if it

is based on substantial evidence, even if substantial evidence would also have supported

the opposite conclusion." *Gayheart,* 710 F.3d at 374. Thus, despite inconsistencies,

there is substantial evidence supporting the ALJ's conclusion that Plaintiff was able to

manage her personal care, prepare meals, perform housework, shop in stores, use public

transportation, manage finances, talk on the telephone, and attend church and bingo.

Second, the ALJ asserted Dr. Flexman's and Dr. Souder's opinions support his

conclusion that Plaintiff's mental impairments were not severe. To reach this conclusion,

the ALJ weighed the doctors' opinions. Social Security Regulations recognize several

different categories of medical sources: treating physicians, nontreating yet examining

physicians, and nontreating yet record-reviewing physicians. *Gayheart*, 710 F.3d at 375.

Under the treating physician rule, only treating source opinions can be entitled to

controlling weight. 20 C.F.R. § 404.1527. In comparison, "opinions from nontreating

and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart,* 710

F.3d at 376. Instead, the ALJ must consider the following factors to determine the weight

given to other medical opinions: examining relationship; the length, frequency, nature,

and extent of the treatment relationship; supportability; consistency; specialization, and

other factors. 20 C.F.R. § 404.1527(c), (e). Although the ALJ is "not bound by the

findings made by State agency or other program physicians and psychologists, … they

may not ignore these opinions and must explain the weight given to the opinions in their

decisions." Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2,

1996). *See Gayheart,* 710 F.3d at 379 (citing 20 20 C.F.R. § 404.1527(c); Soc. Sec. Reg.

No. 96-6p, 1996 WL 374180, at *2) ("[The ALJ's] failure to apply the same level of

scrutiny to the opinions of the consultative doctors on which he relied, let alone the

greater scrutiny of such sources called for by 20 C.F.R. § 404.1527, further demonstrates

that his assessment of [the treating doctor's] opinions failed to abide by the

Commissioner's regulations….").

The ALJ gave "greater weight" to the opinions of Drs. Flexman and Souder, and

he gave "little weight" to the opinions of Drs. Halmi and Tangeman. (Doc. #7, *PageID*

#69). He explained,

> The opinions of Dr. Flexman and Dr. Souder are supported by the evidence
> of record as a whole, including lack of mental health treatment and
> claimant's activities of daily living. Further, despite adopting the opinion
> of Dr. Halmi, Dr. Tangeman stated that the medical evidence of record at
> reconsideration does not support a significant change from the September
> 18, 2013, consultative examination with Dr. Flexman. Still further, the
> opinion of Dr. Halmi conflicts with the corresponding mental status
> examination showing only mild to moderate clinical findings.

*Id.* at 69 (internal citations omitted).

Plaintiff asserts that Dr. Flexman's opinions are not supported by substantial

evidence. (Doc. #8, *PageID* #s 539-40). Plaintiff's argument is slightly unusual, as the

ALJ's findings must be supported by substantial evidence, not the physician's opinions.

Plaintiff is correct to the extent that she is saying supportability is a factor for the ALJ to

consider when evaluating medical evidence. Nevertheless, the evidence shows that Dr.

Flexman's opinions are supported by the relevant medical evidence.

Specifically, Plaintiff first asserts that Dr. Flexman's opinion – that Plaintiff's

immediate attention span is "fair" – is not supported by substantial evidence. Dr.

Flexman opined that based on various tests given throughout the interview, Plaintiff's

immediate attention span was fair, her concentration was good, and her recent and remote

memory were fair. (Doc. #7, *PageID* #360). Dr. Halmi evaluated Plaintiff's attention

18

and concentration using similar tests. *Id.* at 396. He found that her attention and concentration were adequate, her short term memory was low average, and her recent memory and remote memory were adequate. *Id.* Similarly to Dr. Flexman, Dr. Halmi noted Plaintiff was able to maintain adequate attention and concentration to complete the evaluation. *Id.* at 361, 396. Although the two used similar evaluation techniques, Dr. Flexman concluded that Plaintiff did not have limitations in maintaining attention, concentration, persistence, and pace, and Dr. Halmi concluded she would. *Id.* at 399. It was reasonable for the ALJ to rely on Dr. Flexman's opinion due to the support from the findings of both Dr. Flexman's and Dr. Halmi's exams of Plaintiff.

Plaintiff next asserts that her poor eye contact during her evaluations indicates that she would have limitations in responding appropriately to coworkers and supervisors. (Doc. #8, *PageID* #540). Neither Dr. Flexman nor Dr. Halmi associate Plaintiff's eye contact with her ability to respond appropriately in work settings. Dr. Flexman opined that based on Plaintiff's work history and her relationships with others generally, she "may not have problems in relation to others." (Doc. #7, *PageID* #361). Dr. Flexman's notes also indicate Plaintiff reported that she got along well with her coworkers and supervisors and regularly visits and speaks to her children, parents, siblings, in-laws, and grandchildren. *Id.* at 358. In comparison, Dr. Halmi found that based on Plaintiff's history of problems getting along with others and her self-report of irritability, she would have "at least intermittent problems getting along with coworkers, supervisors, and the general public." *Id.* at 399. Dr. Halmi's conclusion conflicts with his previous note indicating Plaintiff "does not have a history of problems getting along with others in the

community such as clerks, neighbors, or the general public." *Id.* at 394. Although, Dr. Halmi contradicts himself immediately by adding, "She does get in occasional arguments with store clerks." *Id.* Dr. Halmi also notes Plaintiff has a history of problems with supervisors, and she has not had problems with attendance. *Id.* Plaintiff's testimony that she was terminated for being absent conflicts with Dr. Halmi's second observation. *Id.* at 80. Due to the conflicting information in Dr. Halmi's report, it was reasonable for the ALJ to give more weight to Dr. Flexman's report.

Finally, Plaintiff contends that Dr. Flexman's opinion that Plaintiff would not have significant limitations in responding to work pressures is not supported by substantial evidence. (Doc. #8, *PageID* #540). Plaintiff asserts that Dr. Flexman's opinion conflicts with Dr. Halmi's opinion, a form completed by Plaintiff's husband, and Plaintiff's testimony. Dr. Flexman explained that Plaintiff's work history does not indicate problems with work pressure, she was able to cope and deal with the interview process, and her daily living stress did not appear to affect her work pressures. (Doc. #7, *PageID* #361). Dr. Halmi concluded Plaintiff's low frustration tolerance and lack of initiative and motivation would restrict her abilities to respond to work pressures. *Id.* at 399. Dr. Halmi does not provide any support for his conclusions. Although Plaintiff claims Dr. Flexman's opinion conflicts with her statements, the ALJ did not find Plaintiff to be fully credible. In light of the inconsistencies, it was reasonable for the ALJ to conclude Dr. Flexman's opinion was entitled to greater weight.

The ALJ correctly observed two substantial inconsistencies in Dr. Tangeman's and Dr. Halmi's opinions. First, despite relying heavily on Dr. Halmi's opinions, Dr.

Tangeman found that the medical evidence of record does not support significant changes from the first consultative examination with Dr. Flexman.  However, Dr. Tangeman determined Plaintiff has moderate limitations in multiple areas where Dr. Flexman did not assess any limitations.  For example, Dr. Tangeman found that Plaintiff was moderately limited in her abilities to interact appropriately with the general public and respond appropriately to criticism from supervisors.  *Id.* at 133.  In comparison, Dr. Flexman opined Plaintiff "may not have problems in relation to others in the workplace." *Id.* at 361.

Further, Dr. Tangeman's opinion conflicts with Dr. Halmi's opinion.  Specifically, Dr. Halmi assessed significant limitations in several areas where Dr. Tangeman assessed no significant limitation or moderate limitations.  For example, Dr. Halmi opined Plaintiff would have "difficulty understanding and carrying out multi-step instructions." *Id.* at 399.  In comparison, Dr. Tangeman concluded Plaintiff was not significantly limited in her ability to carry out detailed instructions.  *Id.* at 132.

Both record-reviewing State agency doctors at reconsideration, Dr. Tangeman and Dr. Torello, also questioned the weight Dr. Halmi's opinion.  Dr. Tangeman found that Dr. Halmi's opinion was entitled to "other weight" because "while evidence supports limitations, the [claimant's] work history and education supports that she is capable of simple and complex tasks.  She definitely lacks motivation[,] however, evidence does not support significant social or other limitations that completely prevent her from returning to gainful employment." *Id.* at 132.  Similarly, Dr. Torello noted,

21

> The [Dr. Halmi] opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion.  The opinion is without substantial support from other evidence of record, which renders it less persuasive.  The CE examiner's opinion is an overestimate of the severity of the individual's restrictions/limitations and based only on a snapshot of the individual's functioning.

*Id.* at 134.

Based on the number of inconsistencies and the lack of support in the record for Drs. Halmi's and Tangeman's opinions, it was reasonable for the ALJ to give more weight to the opinions of Drs. Flexman and Souder.

Finally, ALJ Grippo asserted that "the record contains no evidence of dedicated mental health treatment, inconsistent with severe mental health symptoms."  *Id.* at 68.  However, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir. 1989).  This is particularly relevant in light of Plaintiff's testimony explaining that because of her depression, she does not have "energy to do too much or get up."  (Doc. #7, *PageID* #90).

Additionally, the ALJ appears to have ignored Plaintiff's lack of health insurance.  The Social Security Administration explains,

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

Soc. Sec. Rul. No. 96-7P, 1996 WL 374186, at *7 (Soc. Sec. Admin. July 2, 1996).[3]  In the present case, Plaintiff testified she did not have health insurance.  (Doc. #7, *PageID* #88).  Additionally, her husband noted in the function report that they cannot afford her medication.  *Id.* at 291.

Further, the ALJ did not acknowledge Plaintiff received medication for depression from her family-care physician, Dr. Klug.  *Id.* at 322.  On July 2, 2013, Dr. Klug noted Plaintiff was positive for depression and anxiety and indicated in his assessment plan that he prescribed amitriptyline for depression.  *Id.* at 323-25.  However, some confusion arises from Dr. Klug's treatment notes.  Although Dr. Klug's assessment plan indicated Plaintiff was to take amitriptyline for depression, Dr. Klug also noted Plaintiff was instructed to "take 1 tablet [of amitriptyline] by oral route every day at bedtime for *pain*."  *Id.* at 326 (emphasis added).  Further, Plaintiff testified she was not taking any medication for depression.  *Id.* at 90.  Although the ALJ likely should not have considered the Plaintiff's lack of treatment, the ALJ did provide other reasons for his finding that Plaintiff's mental impairments were not severe, and substantial evidence supports those reasons.

Therefore, substantial evidence supports the ALJ's finding that Plaintiff's mental impairments are not severe.

---

[3] The Social Security Administration issued Soc. Sec. Rul. No. 16-3p, effective March 16, 2016, which supersedes Soc. Sec. Rul. No. 96-7p.  At the time of the ALJ's decision in this case, Soc. Sec. Rul. No. 96-7p was still in effect.

### B.    Plaintiff's Husband's Statement

Plaintiff asserts that the ALJ erred by failing to consider Plaintiff's husband's statements.  Social Security Regulations allow ALJs to "use evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work."  20 C.F.R. § 404.1513(d).  However, evidence from "'other sources' cannot establish the existence of a medically determinable impairment."  Soc. Sec. Rul. No. 06-03P, 2006 WL 2329932, at *2 (Soc. Sec. Admin. Aug. 9, 2006).  When the ALJ considers evidence from non-medical sources such as spouses, the Ruling suggests that "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence."  *Id.* at *6.  Although the ALJ is required to consider all relevant evidence, the ALJ is not required to explain the weight given to other sources.  *Id.* at *6.  Nevertheless, ALJs are encouraged to explain the weight assigned to other sources:

> [T]he adjudicator generally should explain the weight given to the opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id*.  Additionally, when evaluating the claimant's credibility, the ALJ may use information from other sources.  Soc. Sec. Rul. No. 96-7p, 1996 WL374186, at *5 (Soc. Sec. Admin. July 2, 1996).

Plaintiff's husband submitted a one page letter to the Social Security Administration, and he completed and/or assisted in completing a function report.  The

Commissioner acknowledges that the ALJ did not discuss the letter but did reference the function report. (Doc. #11, *PageID* #572). The Commissioner also correctly observed that it is not clear from function report that Plaintiff's husband completed the form, as some questions were answered in first person as if Plaintiff was answering and others were answered in the third person as if he was answering. (Doc. #7, *PageID* #287) (responding "I don't drive," but then "she['s] not with her grandchildren like before.").

Plaintiff contends, "These statements are relevant as they corroborate Ms. Jamison's statement concerning her symptoms and daily activities, and thus help support the credibility of her statements." (Doc. #8, *PageID* #546). However, several portions of the function report are contradicted by her testimony as well as by statements of the State agency physicians. In addition, the letter from Plaintiff's husband is contradicted by her testimony. For example, Plaintiff's husband states, "she can't hold a class of water…." (Doc. #7, *PageID* #277). But in response to the ALJ asking, "what about things that don't weigh very much? Like, have you ever dropped a coffee cup, it just slipped from your hands?", Plaintiff testified, "[n]ot a coffee cup but like paper, … if I can't feel it, I can drop it." *Id.* at 98. Plaintiff's husband also indicates she only receives a $70 stipend, but Plaintiff testified she receives $266 per month from former employers. *Id.* at 79, 277. Although ALJ Grippo is required to consider all relevant evidence, he is not required to explain the weight assigned to it. And, based on the limited amount of information provided by Plaintiff's husband along with several inconsistencies with other evidence, it was reasonable for the ALJ to not address the Plaintiff's husband's letter.

### C.     Outcome

The court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standard and whether the ALJ's decision is supported by substantial evidence.  *Gayheart,* 710 F.3d at 374.  In the present case, ALJ Grippo applied the correct legal standards to determine at step two that Plaintiff did not have a severe impairment or combination of impairments that lasted or were expect to last for at least twelve months.  The ALJ's decision is supported by substantial evidence.

Accordingly, Plaintiff's challenges to the ALJ's decision lack merit.

### IT IS THEREFORE RECOMMENDED THAT:

1.     The ALJ's non-disability decision be affirmed; and

2.     The case be terminated on the Court's docket.

Date: July 29, 2016                              *s/Sharon L. Ovington*
                                                 Sharon L. Ovington
                                                 Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).